PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DEBRA KINDS, | ) | CASE NO.  1:10CV01596 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| THE OHIO BELL TELEPHONE | ) | |
| COMPANY, *d/b/a* AT&T, | ) | **MEMORANDUM OF OPINION AND** |
| | ) | **ORDER** |
| Defendant. | ) | [Resolving ECF Nos. 31 and 33] |

This action is before the Court upon Defendant Ohio Bell's Motion for Summary

Judgment (ECF No. 31) and Plaintiff Debra Kinds's Motion for Summary Judgment as to

Liability Only (ECF No. 33).  The Court has reviewed the parties' briefs and the applicable law.

For the reasons discussed below, the Court grants Defendant Ohio Bell's Motion for Summary

Judgment and denies Plaintiff Debra Kinds's Motion for Summary Judgment as to Liability

Only.

## I.  Background

### A.  Factual History

Debra Kinds had been employed by Ohio Bell since April 24, 2000.  ECF No. 23 at 28.

In 2005, she was transferred to Ohio Bell's repair center in Brecksville, where she worked as a

Maintenance Operator assisting customers who were having difficulties with their phones.  ECF

No. 23 at 30-31.  Employees of the Brecksville Repair Center, like Kinds, enjoyed access to both

(1:10CV01596)

FMLA leave and Short-Term Disability ("STD") coverage under Ohio Bell's disability plan.

ECF No. 31-10 ¶ 2.

Ohio Bell's policy treats any leave that qualifies for STD benefits as also qualifying for FMLA leave.  ECF No. 31-10 ¶ 2.  Claims for FMLA-leave and STD-leave are reviewed separately by different entities: FMLA requests are handled by the FMLA Operations Department of AT&T[1] in its San Antonio offices (ECF No. 31-10 ¶ 1), while STD requests are administered by a third-party company, Sedgwick Claims Management Services ("Sedgwick") through Sedgwick's AT&T Integrated Disability Service Center ("IDSC") (ECF No. 28 at 24).  Kinds had previously requested both types of leave.  ECF No. 23 at 47.  While she testifies that she did not understand the concept of concurrent coverage under FMLA and STD, Kinds admits that she was aware that STD claims are handled by Sedgwick and IDSC.  ECF No. 23 at 49-50.

When an employee misses seven days of work, two separate procedures begin.  First, both the employee and the Operations Department receive an FMLA1 form which indicates whether the employee is eligible for FMLA leave.  ECF No. 31-9 ¶ 6.  Upon receipt of the FMLA1 form, the Operations Department informs the employee that one of two things will happen with regards to the employee's FMLA claim.  If the absence qualifies for STD leave, the employee automatically qualifies for FMLA benefits and does not need to submit additional paperwork to FMLA Operations.  ECF No. 31-10 at 4.  If the absence does not qualify for STD leave, the employee has the right to submit a medical certification form ("FMLA4") to demonstrate that she

---

[1]  FMLA Operations handles all FMLA claims for employees of AT&T family companies, including Ohio Bell.  ECF No. 31-10 ¶ 1.

(1:10CV01596)

qualifies for FMLA leave.  ECF No. 31-10 at 4.  Pursuant to company policy, the employee must submit the medical certification form within fifteen days of receipt of FMLA4.  ECF No. 31-10 ¶ 6.

At the same time the Operations Department receives the FMLA1 form, the eighth day of absence commences a claim for STD coverage subject to review by Sedgwick.  ECF No. 28 at 20-21.  In conducting this review, a Sedgwick claims manager will contact the employee and require her to submit medical information supporting her disability claim.  ECF No. 28 at 22. Upon notification that Sedgwick has found that the employee qualifies for STD, FMLA Operations Department notifies the employee that FMLA leave will run concurrently.  ECF No. 31-10 ¶ 5.  Conversely, when Sedgwick denies an employee STD benefits, Sedgwick shares with FMLA Operations that the claim was denied, but not the basis for denial.  ECF No. 27 at 49-50. If any portion of the absence is approved for disability, the seven day waiting period at the start of the absence is automatically coded as FMLA leave.  ECF No. 31-10 ¶ 7.  The employee still must submit a medical certification form in order to qualify for FMLA leave for the days that were not either automatically coded as FMLA leave or running concurrently with approved STD leave.  ECF No. 31-10 at 4.

Employees of the Brecksville Repair Center are also subject to an attendance policy. Employees are allowed a certain number of unexcused or "chargeable" tardies (between five minutes and two hours late) or incidental absences (two or more hours late, and any subsequent dates that the employee misses).  ECF Nos. 23 at 52-53; 25-3 at 6.  Prior to October 13, 2009,

3

(1:10CV01596)

Kinds advanced through sufficient disciplinary steps to be at risk of termination if she incurred one more unexcused absence. ECF No. 23 at 55-60.

On October 12, 2009 Kinds left work during her shift and commenced what would become a nine week absence from work effective October 13, 2009. ECF No. 23 at 71. On October 20th, the Brecksville Repair Center's Attendance Manager, Lashon Borom, sent an FMLA1 form to Kinds and FMLA Operations, indicating that Kinds's absence had also triggered an STD claim. ECF No. 25 at 73. The next day, FMLA Operations sent a letter to Kinds about her obligations under the company's attendance policy: that no paperwork would be required for FMLA if her entire absence were approved for STD and that she would be responsible for submitting medical certification for any absence not covered under STD. ECF No. 31-10 at 4.

On November 24, 2009, Sedgwick informed Kinds that she qualified for STD benefits (and therefore FMLA leave as well) for her absence between November 10, 2009 and December 14, 2009. ECF No. 31-11 at 3. Sedgwick, however, found that the part of Kinds's absence spanning October 20, 2009 to November 9, 2009, did not qualify for STD benefits. ECF No. 31-11 at 3. Specifically, Sedgwick indicated that the medical information provided by one of Kinds's doctors, Paula Reshotko, did not support that Kinds was unable to perform her occupation between October 20th and November 9th. ECF No. 31-11 at 3. Because a portion of her absence qualified for disability, Kinds's absence from October 13, 2009 through October 19, 2009 was automatically coded as FMLA leave by Ohio Bell's payroll system. ECF No. 31-10 ¶ 7. Kinds retained counsel to appeal Sedgwick's decision: On December 1, 2009, her attorney

4

(1:10CV01596)

requested information from Sedgwick about its decision (ECF No. 23-17).  Kinds appealed on

December 7, 2009 (ECF No. 23-16).

       Kinds returned to work part-time on December 15, 2009.  ECF No. 23 at 74.  She

resumed work full-time on December 29, 2009.  ECF No. 23 at 74.  That day, Borom gave Kinds

an FMLA1 form for the period of her absence that was not covered by STD.  ECF Nos. 23 at

120-21; 23-21.  Borom also gave Kinds an FMLA4 medical certification form, and informed

Kinds that she had to submit certification to FMLA Operations within fifteen days, by January

13, 2010.  ECF No. 25 at 93-94.  On January 5, 2010, FMLA Operations sent Kinds a reminder

letter that reiterated that Kinds needed to submit medical certification by the 13th.  ECF No. 31-

10 at 5.  Kinds did not submit medical certification to FMLA Operations by January 13th.  ECF

No. 31-10 ¶ 11.  Seven days later, however, Kinds asked FMLA Operations for an extension.

ECF No. 23 at 124.  FMLA Operations extended the deadline to January 27th.  ECF No. 31-10 ¶

11.  Kinds, however, failed to submit medical certification by this extended deadline as well.

ECF No. 31-10 ¶ 12.  Five days earlier, Dr. Suzana Sarac-Leonard faxed a letter on January 22,

2010 to Sedgwick that stated that Kinds should receive disability for the time period between

October 20, 2009 and November 11, 2009.  ECF No. 31-11 at 10.  This letter did not indicate

what condition constituted Kinds's disability, and the letter was not given to FMLA Operations

by Sedgwick due to HIPAA.[2]  ECF No. 31-11 ¶ 6.

---

     [2]  The Health Insurance Portability and Accountability Act of 1966 controls the
sharing of private health information, among other things.

(1:10CV01596)

On February 2, 2010, FMLA Operations notified Kinds that her request for FMLA leave for her October 20-November 9, 2009 absence was denied because Kinds had failed to submit medical certification by either the regular or the extended deadline. ECF No. 31-10 at 6. Despite her noncompliance, FMLA Operations gave Kinds a chance to have this decision overturned if, by February 17, 2010, she provided adequate medical certification and a letter explaining why she was unable to comply with the first two deadlines. ECF No. 31-10 at 6. The day before the third deadline, on February 16, 2010, Dr. Leonard submitted another medical certification form to FMLA Operations. ECF No. 29-3. The certification left blank the answers to a number of questions, and Dr. Leonard failed to submit an explanation for why the certification could not have been submitted by January 13, 2010. ECF No. 29-3.

On February 22, 2010, FMLA Operations sent Kinds a letter, notifying her that the request for FMLA coverage for October 20-November 9, 2009 was denied because Kinds had failed to explain why she had not submitted certification before the previous deadlines. ECF No. 23-26. Because Kinds's absence during that time period was not covered by FMLA, it was treated as a chargeable offense and Kinds was placed on suspension pending termination. ECF No. 23-32. A meeting was held on March 9, 2010 to discuss Kinds's termination. ECF No. 23 at 165. During the meeting, it was noted that Kinds's STD appeal with Sedgwick was still pending, so the termination decision was delayed until the appeal was resolved. ECF No. 23 at 167. On March 29, 2010, Sedgwick notified Ohio Bell that Kinds's appeal had been denied. ECF No. 23 at 142. Ohio Bell terminated Kinds the next day. ECF No. 23-33.

6

(1:10CV01596)

### B.  Procedural History

Kinds commenced this lawsuit against Defendant Ohio Bell, alleging interference with her FMLA rights.  ECF No. 3.  In her Amended Complaint, Kinds alleges that Ohio Bell (1) improperly characterized her absence during the October 20-November 9, 2009 time period as not qualified for FMLA; (2) failed to request certification within five business days of learning about Kinds' request for leave; and (3) suspended and subsequently terminated Kinds for leave that was FMLA protected.  ECF No. 3 ¶ 27.

Ohio Bell moved for Summary Judgment (ECF No. 31); Kinds responded (ECF No. 35); Defendant replied (ECF No. 38).  Additionally, Kinds moved for Summary Judgment as to Liability Only (ECF No. 33); Defendants responded (ECF No. 34); Kinds replied (ECF No. 39). Defendant avers that Kinds was not entitled to FMLA leave because she failed to submit timely medical certification that she was suffering from a serious medical condition, and, thus, Defendant is entitled to summary judgment as a matter of law.  ECF No. 31-1.  Conversely, Kinds alleges that, not only did she properly submit medical certification for a serious medical condition, but she is also entitled to summary judgment because Defendants have failed to produce evidence to refute Kinds' FMLA interference claim.  ECF No. 33-1.  This matter is ripe for consideration.

### II.  Legal Standard

Summary judgment is appropriately granted when the pleadings, the discovery and disclosure materials on file, and any affidavits show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a);

(1:10CV01596)

*see also* *Johnson v. Karnes*, 398 F.3d 868, 873 (6th Cir. 2005). The moving party is not required to file affidavits or other similar materials negating a claim on which its opponent bears the burden of proof, so long as the movant relies upon the absence of the essential element in the pleadings, depositions, answers to interrogatories, and admissions on file. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party must "show that the non-moving party has failed to establish an essential element of his case upon which he would bear the ultimate burden of proof at trial." *Guarino v. Brookfield Twp. Trustees*, 980 F.2d 399, 403 (6th Cir. 1992).

Once the movant makes a properly supported motion, the burden shifts to the non-moving party to demonstrate the existence of a genuine dispute. An opposing party may not simply rely on its pleadings; rather, it must "produce evidence that results in a conflict of material fact to be resolved by a jury." *Cox v. Ky. Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995). The non-moving party must, to defeat the motion, "show that there is doubt as to the material facts and that the record, taken as a whole, does not lead to a judgment for the movant." *Guarino*, 980 F.2d at 403. In reviewing a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party when deciding whether a genuine issue of material fact exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970).

The United States Supreme Court, in deciding *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986), stated that in order for a motion for summary judgment to be granted, there must be no genuine issue of material fact. *Id.* at 248. A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Id.* In determining whether a factual issue is "genuine," the court

8

(1:10CV01596)

must decide whether the evidence is such that reasonable jurors could find that the non-moving party is entitled to a verdict. *Id.* Summary judgment "will not lie . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* To withstand summary judgment, the non-movant must show sufficient evidence to create a genuine issue of material fact. *Klepper v. First Am. Bank*, 916 F.2d 337, 342 (6th Cir. 1990). The existence of a mere scintilla of evidence in support of the non-moving party's position ordinarily will not be sufficient to defeat a motion for summary judgment. *Id.*

## III.  Analysis

The FMLA states that "[i]t shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise any right provided [by this Act]." 29 U.S.C. § 2615(a)(1). An employee has two different causes of action under the FMLA: interference and retaliation. *Hunter v. Valley View Local Schools*, 579 F.3d 688, 691 (6th Cir. 2009). A claim for FMLA interference has five prongs. *Novak v. MetroHealth Med. Ctr.*, 503 F.3d 572, 577-78 (6th Cir. 2007). First, the employee must be an eligible employee, defined under the FMLA as an employee who has been employed by the employer for at least twelve months and has worked for at least 1,250 hours in the past twelve months. 29 U.S.C. § 2611(2). Second, the eligible employee must work for a covered employer within the meaning of FMLA. 29 U.S.C. § 2611(2). Third, the eligible employee must have been entitled to leave under the FMLA. *Novak*, 503 F.3d at 578. Fourth, the eligible employee must have given the employer notice of her intention to take FMLA leave. *Id.* Fifth, the employer must have denied FMLA benefits to which the eligible employee was entitled. *Id.* The parties do not contest that Kinds satisfies the first,

9

(1:10CV01596)

second, and fourth prongs of the claim.  At issue are the third and fifth prongs of Kinds's claim–whether she was entitled to leave under the FMLA and whether Ohio Bell denied benefits to which Kinds was entitled.

A plaintiff may be entitled to leave under the FMLA "[b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D).  A "serious health condition" is defined as "an illness, injury, impairment, or physical or mental condition that involves (A) inpatient care in a hospital, hospice, or residential medical care facility or (B) continuing treatment by a health care provider." 29 U.S.C. § 2611(11).  A plaintiff may show continuing treatment under the theory that she was incapacitated and receiving treatment.  29 C.F.R. § 825.115(a).  This requires that the plaintiff both show that (1) she was incapacitated for three or more consecutive days, and (2) that she was receiving treatment, either two or more times within thirty days of the first day of incapacitation, or one treatment that resulted in a "regimen" of continuing treatment under the health care provider.  *Id.*  A plaintiff demonstrating incapacitation has the burden of showing "she was prevented from working *because* of the injury or illness." *Olsen v. Ohio Edison Co.*, 979 F. Supp. 1159, 1166 (N.D. Ohio 1997) (O'Malley, J.) (emphasis in original).  This determination must be "based on the medical provider's assessment of the claimed condition." *Id.*  It is not enough that the employee is "uncomfortable" doing work; it must be that the employee cannot work because of the illness.  *Id.*  The first treatment the employee receives must be in person with the health care provider, and within seven days of the first day of incapacity. 29 C.F.R. § 825.115(3).

10

(1:10CV01596)

A plaintiff also bears the responsibility of furnishing certification of the serious medical condition if the employer requests it.  *See* 29 C.F.R. § 825.305(d).  When the entitlement to leave is for self-care under § 2612, as it is here, § 2613 states that an employer "*may* require" certification that supports the requested leave.  29 U.S.C. § 2613(a) (emphasis added).  While in most cases, an employer will request certification within five days of unforeseen leave, "[t]he employer *may* request certification at some later date if the employer later has reason to question the appropriateness of the leave or its duration."  29 C.F.R. § 825.305(b) (emphasis added).  Regardless of the request is made, the employee must provide sufficient certification to the employer within fifteen days of a request, "unless it is not practicable under the particular circumstances to do so."  29 C.F.R. § 825.305(b).  Sufficient certification requires the health care provider state "the date on which the serious health condition began, the probable duration of the condition, the appropriate medical facts within the health care provider's knowledge, and a statement that the employee is unable to perform her job duties."  *Novak*, 503 F.3d at 578 (quoting *Brenneman v. MedCentral Health Sys.*, 366 F.3d 412, 422 (6th Cir. 2004)); *see also* 29 U.S.C. § 2613(b).

If the plaintiff submits an incomplete or inadequate certification, the employer is required to provide the plaintiff with the opportunity to cure the deficiencies.  *Sorrell v. Rinker Materials Corp.*, 395 F.3d 332, 337 (6th Cir. 2005) ("Pursuant to 29 C.F.R. § 825.305(d), if Rinker found Dr. Opremcak's medical certification incomplete, it had a duty to advise Sorrell of that fact and to provide Sorrell a reasonable opportunity to cure any such deficiency in the certification.").  The regulations make it clear, however, that "[a] certification that is not returned to the employer

11

(1:10CV01596)

is not considered incomplete or insufficient, but constitutes a failure to provide certification." 29 C.F.R. § 825.305(c). When an employee fails to provide certification, "the employer may deny the taking of FMLA leave." 29 C.F.R. § 825.305(d).

The Sixth Circuit and district courts within it will uphold the denial of FMLA benefits when certification is submitted beyond the fifteen-day deadline, even when the employee only misses it by a short amount of time. For example, in *Frazier v. Honda of Am. Mfg., Inc.*, 431 F.3d 563 (6th Cir. 2005), Honda terminated an employee for excessive absenteeism after he turned in a medical certification form one day late. *Id.* at 565. The Court noted that the plaintiff's claim failed because the plaintiff violated 29 U.S.C. § 2613(a) by failing to "provide, in a timely manner, a copy of such certification to the employer." 29 U.S.C. § 2613(a), *quoted in Frazier*, 431 F.3d at 567. In affirming summary judgment for the defendant, the Court noted that it did not need to reach the plaintiff's arguments. *Frazier*, 431 F.3d at 567; s*ee also Poling v. Core Molding Technologies*, No. 2:10-CV-963, 2012 WL 423762, at *5 (S.D. Ohio Feb. 9, 2012) (Frost, J.) ("Plaintiff did not comply with Core's valid request for a medical certification of the September 21, 2008 absence. Core was therefore entitled to treat Plaintiff's absence as non-FMLA leave, which carried with it in this case the consequence of termination.").

## A.

Here, Ohio Bell's decision to deny Kinds FMLA coverage due to untimely certification is justified. After Kinds returned to work full-time on December 29, 2009, Borom gave Kinds an FMLA4 form that described in writing what was required of her in order to receive FMLA coverage for the period of her absence that was not covered by STD. ECF No. 25 at 94. The

12

(1:10CV01596)

medical certification made it clear that the January 13, 2010 deadline (by which the medical

certification was due) was in full compliance with the FMLA's fifteen day time period.  ECF No.

23-25 at 3.  A follow up letter was sent to Kinds on January 5, 2009, reminding her of the

January 13, 2009 deadline.  ECF No. 31-10 at 5.  In spite of ample notification by Ohio Bell,

Kinds did not submit certification by the 13th.  ECF No. 31-10 ¶ 11.  Under *Frazier*, Ohio Bell

would have been justified in denying coverage for this failure alone, but the company nonetheless

granted Kinds an extension.  ECF No. 31-10 ¶¶ 11-12.  Kinds failed to submit certification by the

January 27, 2010 deadline as well.  ECF No. 31-10 ¶¶ 11-12.  Finally, on February 16, 2010,

Kinds submitted the medical certification, but it failed to provide an explanation–a request made

by FMLA Operations as a condition for giving Kinds a third extension–as to why she failed to

submit certification earlier.  ECF No. 29-3.  As a matter of law, it cannot be said that Ohio Bell's

refusal to accept Kinds's twice late and still inadequate certification– submitted one month past

the FMLA required fifteen-day period--constituted interference with Kinds's FMLA rights.

**B.**

Kinds makes a number of arguments in an attempt to demonstrate a violation of her

FMLA rights.  Each argument, however, either misconstrues governing law, the undisputed

record, or both.  Kinds first denies that she failed to timely submit the required FMLA

certification.  In support of this argument, Kinds argues that it is undisputed that Dr. Leonard

faxed a letter on January 22, 2010, five days before the second deadline.  ECF No. 33-1 at 28.

There are two problems with Kinds' argument.  First, Dr. Leonard faxed the letter to Sedgwick,

not FMLA Operations, in support of Kinds's disability claim, not her FMLA claim.  ECF No. 31-

13

(1:10CV01596)

11 at 10.  Because HIPAA prevented Sedgwick from sharing this private medical information

with FMLA Operations (ECF No. 31-11 ¶ 6), contrary to Plaintiff's assertions, Ohio Bell never

saw the letter.  Second, even if it were assumed that Ohio Bell had seen the January 22, 2010

letter, Kinds would still have submitted certification nine days past the January 13th deadline.

Plaintiff does not offer any case law to explain why the holding in *Frazier*, in which the Sixth

Circuit upheld the denial of FMLA coverage when certification was submitted just one day late,

would not also control in this case.

Kinds next argues that she cannot have failed to submit timely medical certification

because Ohio Bell never properly "triggered the additional duty to provide a medical certification

supporting her claim."  ECF No. 33-1 at 31; *see also Branham v. Gannett Satellite Info. Network,*

*Inc.*, 619 F.3d 563, 573 (6th Cir. 2010).  Kinds argues that 29 C.F.R. § 825.305(b) requires a

request for medical certification be made within five business days of an employee's request for

leave, and that Ohio Bell failed to do so in violation of the regulation and Kinds's FMLA rights.

The regulation states:

> *In most cases*, the employer should request that an employee furnish certification at the
> time the employee gives notice of the need for leave or within five business days
> thereafter, or, in the case of unforeseen leave, within five business days after the leave
> commences.  The employer may request certification at some later date if the employer
> later has reason to question the appropriateness of the leave or its duration.  The
> employee must provide the requested certification to the employer within 15 calendar
> days after the employer's request, unless it is not practicable under the particular
> circumstances to do so despite the employee's diligent, good faith efforts or the employer
> provides more than 15 calendar days to return the requested certification.

29 C.F.R. § 825.305(b) (emphasis added).

14

(1:10CV01596)

Kinds interprets this regulation as requiring the employer to request certification within five business days in every case, and cites to authority that suggests that reviewing courts should interpret the words within regulations based using their plain meaning.  *Cash v. Conn Appliances, Inc.*, 2 F. Supp 2d. 884, 890 (E.D. Tex. 1997).  Invited to do so, the Court interprets the phrase *in most cases* to have a plain meaning contrary to what Kinds urges.  The balance of 29 C.F.R. § 825.305(b)'s language illustrates that the regulation contemplates certain scenarios that would be an exception to *most cases*: "[t]he employer *may* request certification at some later date *if* the employer later has reason to question the appropriateness of the leave or its duration." That is precisely what has happened here.  As a matter of policy, Ohio Bell considers all STD leave appropriate for FMLA coverage.  ECF No. 31-10 ¶ 2.  After a portion of Kinds's leave was denied STD coverage, Ohio Bell had reason to question the appropriateness of the uncovered leave, and consequently requested medical certification for the uncovered portion when she returned to work full-time on December 29, 2009.  Contrary to Kinds' assertions, Ohio Bell's December 29th request was in accordance with federal regulations.

Kinds also argues FMLA interference due to Ohio Bell's alleged failure to submit, in writing, notice of the insufficiency of Kinds's medical certification.  ECF No. 33-1 at 23.  Kinds indicates that 29 C.F.R. § 825.305(c) requires an employer to notify an employee about insufficient medical certification in writing, and since Ohio Bell failed to do so for Kinds after her February 16th submission, the company violated her FMLA rights.  Section 825.305(c), however, also makes clear that the failure to submit a certification is not considered an

(1:10CV01596)

"inadequate" or "insufficient" submission.[3] *Id.*  Twice, Kinds failed to timely submit a

certification.  She was, rather generously, given a third opportunity to furnish medical

certification only because FMLA Operations, not law,  permitted it.  The gratuitous notification

made it clear that certification would only be considered if Kinds also provided an explanation as

to why certification had not been submitted by the two earlier deadlines.  ECF No. 31-10 at 6.

Because Kinds failed to adhere to the condition that Ohio Bell clearly placed on the third--

February 17, 2010--deadline, Ohio Bell was under no obligation to consider the certification

submitted on February 16, 2010.

      Plaintiff finally argues that a recent Sixth Circuit case, *Branham v. Gannett Satellite Info.*

*Network*, 619 F.3d 563 (6th Cir. 2010), controls this case and compels the Court to hold that

Ohio Bell interfered with Kinds's FMLA rights.  ECF No. 33-1 at 31.  This argument fails

---

[3] The regulation provides:
Complete and sufficient certification.  The employee must provide a complete and
sufficient certification to the employer if required by the employer in accordance with §§
825.306, 825.309, and 825.310.  The employer shall advise an employee whenever the
employer finds a certification incomplete or insufficient, and shall state in writing what
additional information is necessary to make the certification complete and sufficient.  A
certification is considered incomplete if the employer receives a certification, but one or
more of the applicable entries have not been completed.  A certification is considered
insufficient if the employer receives a complete certification, but the information
provided is vague, ambiguous, or non-responsive.  The employer must provide the
employee with seven calendar days (unless not practicable under the particular
circumstances despite the employee's diligent good faith efforts) to cure any such
deficiency.  If the deficiencies specified by the employer are not cured in the resubmitted
certification, the employer may deny the taking of FMLA leave, in accordance with §
825.313.  A certification that is not returned to the employer is not considered incomplete
or insufficient, but constitutes a failure to provide certification.

(1:10CV01596)

because *Branham* is distinguishable from the case at bar. In *Branham*, the plaintiff had only been orally asked to fill out a joint STD/FMLA form and was terminated before the fifteen day waiting period had ended and after the defendant received a negative medical certification from a treating health care provider. *Branham*, 619 F.3d at 573. The Sixth Circuit noted that the employer had failed to properly request medical certification from Branham. Because of this failure, the employee's responsibility of furnishing sufficient medical certification was never triggered. *Id.* Also, while not dispositive to its holding, the Court also noted that Branham was terminated prior to the fifteen day waiting period based upon a negative certification that the employer received. *Id.* Unlike the plaintiff in *Branham*, Kinds had received the request for FMLA medical certification in writing. Not only did Kinds receive a proper request for certification from her employer, but she also received both a reminder about submitting the forms on time and two separate extended deadlines, though she failed to take advantage of these opportunities. Additionally, Kinds received the full fifteen-day waiting period *plus an additional month* to furnish certification but failed to do so. Branham was not given fifteen days to provide certification that substantiated her leave. Finally, *Branham* is significantly distinguishable because Branham was fired before the FMLA deadline for submitting certification had passed. Kinds was fired almost ten weeks after the deadline. *Branham* does not save Plaintiff's case.

In short, the undisputed record reflects that Kinds failed to comply with 29 C.F.R. § 825.305(b)'s requirement of furnishing sufficient medical certification to Ohio Bell in a timely manner. Having failed to comply with these regulatory requirements, Kinds cannot establish two essential prongs to her FMLA interference claim: that she was entitled to FMLA leave and Ohio

17

(1:10CV01596)

Bell denied Kinds FMLA leave to which she was entitled.  The Court finds that Kinds was not entitled to FMLA leave during the period of her absence that was not covered by STD. Consequently, Ohio Bell is entitled to summary judgment.

### IV.  Conclusion

For the reasons stated above, the Court grants Defendant Ohio Bell's Motion for Summary Judgment and denies Plaintiff Debra Kinds's Motion for Summary Judgment as to Liability Only.


IT IS SO ORDERED.


 July 30, 2012                                   /s/ Benita Y. Pearson
Date                                        Benita Y. Pearson
                                            United States District Judge

18